UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRANDON TAYLOR, for himself and all others similarly situated, ) ) ) | Case No.  1:13 CV 31 |
| Plaintiff, ) ) | |
| ) | Judge Dan Aaron Polster |
| v. ) ) | |
| AMERICAN INCOME LIFE INSURANCE ) CO. et al. ) ) | OPINION AND ORDER |
| Defendants. ) | |

Brandon Taylor and the thirteen others who have opted into this collective action are suing the defendants under the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Wage Standards Act for failing to pay proper wages and overtime compensation.  Defendants (American Income Life Insurance Company, Surface Agencies Limited, and James Surface) have filed a motion to compel arbitration and dismiss the case.  Plaintiffs oppose the motion, which is now ripe and ready for a ruling.

I.

Plaintiffs were hired by Defendants to work as insurance agents selling life and accident insurance to labor union members.  The terms of the parties' business relationship were set forth in a written contract, called the "Agent Contract," which was signed by each plaintiff and included the following arbitration clause:

In the event of any dispute or disagreement arising out of or relating to this

> contract, the parties shall use their best efforts to settle such disputes. To this effect, they shall negotiate with each other in good faith to reach a just solution. If the parties do not reach a just solution by negotiation as described above, the Agent agrees to utilize the grievance process as outlined in the [Office and Professional Employees International Union ("OPEIU")] Local 277 agreement. If the dispute is not settled through the grievance process, then upon written notice by either party to the other, all disputes, claims, questions, and controversies of any kind or nature arising out of or relating to this contract shall be submitted to binding arbitration pursuant to the provisions of the collective agreement with OPEIU. The findings of the arbitrator shall be final and binding on all parties and their beneficiaries, successors, assigns or anyone claiming an interest in the contract.

(Doc. # 7-3 at 3).

The grievance process referenced above is detailed in Article 14 of the OPEIU Local 277, a collective bargaining agreement, and imposes on the insurance agents certain requirements that must be satisfied before a claim may be submitted to arbitration. For one, Article 14 requires the agents to file a grievance with the union no later than 30 days after a violation occurs—or should have been discovered. For another, Article 14 says that a grievance is allowed to proceed to arbitration only if the union determines, "in its best judgment," that the grievance has merit. (Doc. # 7-4 at 68).

Defendants contend Plaintiffs are obligated by the contract to settle their claims through arbitration, not through this—or any other—lawsuit. Plaintiffs object, arguing that their FLSA and Ohio Minimum Wage Act claims do not fall within the scope of the arbitration provisions and that, even if they do, enforcing the arbitration provisions "will result in an impermissible abridgment of Plaintiffs' substantive rights under the FLSA—thus causing actual prejudice to Plaintiffs." (Doc. # 10 at 2). Plaintiffs' fallback position is that, even if they are required to arbitrate their claims, they have a right to do so collectively, as a group.

II.

A. Scope of the Arbitration Agreement

Plaintiffs do not deny they signed the arbitration agreement nor do they deny the agreement was validly obtained. Instead, they insist that their FLSA and Ohio Minimum Wage Act claims are beyond the scope of the arbitration provision; they say the arbitration agreement applies "only when Defendants' employees seek to enforce the terms of the Agent Contract or filed suit based on that contract—which is not the case here." (Doc. # 10 at 6). The Court disagrees.

The clause covers "disputes, claims, questions, and controversies of any kind or nature *arising out of or relating to this contract*." (Doc. # 7-3 at 3) (Emphasis added). In determining whether a particular claim falls within the scope of a broad arbitration agreement like this one, the Sixth Circuit has applied the following standard: "[I]f an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement. . . ." *NCR Corp. v. Korala Assocs.*, 512 F.3d 807, 814 (6th Cir. 2008) (internal citation and quotation marks omitted).

A wage dispute arises out of, or at least relates to, the Agent Contract, which, like any written contract, helps define the contours of the parties' relationship. Indeed, the contract will play a crucial role in resolving Plaintiffs' FLSA claims, as the FLSA's wage and overtime requirements apply only to employees, not to independent contractors, *see* 29 U.S.C. §§ 206-207, and the parties' express agreement is the best evidence of their intent to create an independent-contractor relationship. *Janette v. Am. Fid. Group, Ltd.*, 298 Fed. Appx. 467, 471 (6th Cir. 2008). In short, the FLSA claims cannot be maintained without reference to the contract.

Plaintiffs want the Court to read the arbitration clause in an artificially narrow way by

limiting its scope to garden variety breach-of-contract claims.  But nothing in the language of the agreement provides such a limitation.  Moreover, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, manifests a liberal policy favoring arbitration agreements, telling courts to resolve any doubts about arbitrability in favor of arbitration.  *Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA").  To the extent there are any doubts about the scope of the parties' agreement, those doubts are resolved in favor of arbitration.

B. Whether the Arbitration Agreement Infringes Plaintiffs' Substantive Rights

Plaintiffs next argue that their substantive rights under the FLSA "cannot be fairly vindicated in the arbitral forum provided for under the OPEIU's Collective Agreements."  (Doc. # 10 at 10).  The argument is based on two aspects of the arbitration agreement: one that significantly shortens the applicable statute of limitations on their FLSA claim; and another that allows Plaintiffs the right to arbitrate their claims if and only if the union deems it appropriate.  The Court shares Plaintiffs' concerns.

The main text of the arbitration agreement, found in the Agent Contract and quoted above, requires an employee to submit his claims to the OPEIU grievance process as a prerequisite to arbitration.  Article 14 of the OPEIU, which is incorporated by reference into the Agent Contract, lays out the grievance process.  It says that an employee's claim must be brought within 30 days of the violation: "A grievance not filed within the required time period is invalid."  (Doc. # 7-4 at 68).  Thus, if a claim is older than 30 days, it will be held invalid under the grievance process and will not be allowed to advance to arbitration.

The Federal Arbitration Act seeks to promote and enforce arbitration agreements. Still, "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer*, 500 U.S. at 26. A statutory claim is amenable to arbitration "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum." *Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 90 (2000) (internal citation and quotation marks omitted).

Under the applicable statute of limitations, an FLSA claim may be brought within two years after the claim accrues—three years if the violation is willful. 29 U.S.C. § 255(a). The arbitration agreement all but eliminates this statute-of-limitations period and practically eviscerates an employee's right to relief. Suppose, for instance, an employer failed to pay his employee overtime compensation for the past 24 months. Without the arbitration provision, the employee can sue in court and recover overtime pay for the entire 24-month period. *With* the arbitration provision, the most he can hope to recover is a single month's worth of overtime pay.

Depriving an employee of his full recovery by diminishing his right to compensation from 24 to 1— a reduction of more than 95%—is not acceptable. It denies him his substantive rights under the FLSA. *See Morrison v. Circuit City Stores*, 317 F.3d 646, 670 (6th Cir. 2003) (an arbitration agreement is unenforceable if it requires an individual to "forego her substantive right to the full panoply of remedies under Title VII," which would "thereby contravene Congress's intent to utilize certain damages as a tool for compensating victims of discrimination and for deterring employment discrimination more broadly"); *Pruiett v. West End Rests., LLC*, 2011 U.S. Dist. LEXIS 131369 (M.D. Tenn. Nov. 14, 2011) (applying the rule in *Morrison* and

holding that an arbitration-agreement provision that shortens the statute of limitations for an FLSA claim to one year "necessarily precludes a successful plaintiff from receiving full compensatory recovery under the statute").

To make matters worse, even if a claim is filed within the requisite 30 days it still may never see the light of arbitration. Article 14 provides that after a claim is submitted in writing the claim can proceed to arbitration only if the union determines "in its best judgment" that the claim has merit. (Id.). In other words, Article 14 makes the union the arbitration gatekeeper. That is wrong; the question of arbitrability—whether the parties have a duty to arbitrate a particular grievance—is for the courts, not for anyone else, to decide. *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 649 (1986). Article 14's arbitration-screening mechanism is therefore invalid.

What, then, is the remedy? To sever Article 14 from the arbitration agreement. Severability is explicitly authorized by the Agent Contract: "If any provision of this contract should be determined to be invalid or otherwise unenforceable under law, the remainder of this Contract shall not be affected thereby." (Doc. # 7-3 at 3). And it is encouraged by the Sixth Circuit: "[W]hen the arbitration agreement at issue includes a severability provision, courts should not lightly conclude that a particular provision of an arbitration agreement taints the entire agreement." *Morrison*, 317 F.3d at 675. Accordingly, the arbitration agreement will be enforced without regard to Article 14 of the OPEIU.

C. Whether Plaintiffs Have a Right to Arbitrate Collectively

The last question is whether Plaintiffs have a right to arbitrate their claims as a group. The answer is no because the right to collective, or group, arbitration is found nowhere in the

contract.

The FAA is meant to ensure that arbitration agreements "are enforced according to their terms." *A T & T Mobility LLC v. Concepcion*, 131 S.Ct.1740, 1748 (2011). Silence on the right to collective arbitration means there is no right to collective arbitration. *Id.* at 1750 (citing *Stolt-Nielsen, S.A. v. Animal Feeds Int'l Corp.*,130 S. Ct. 1758 (2010) for the proposition that an agreement that is silent on the question of class procedures cannot be interpreted to allow them); *Stolt-Nielsen,* 130 S. Ct. at 1782 ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so. . . ."); *see also Fitzhugh v. Am. Income Life Ins. Co.*, 2011 U.S. Dist. LEXIS 156855, 15-16 (N.D. Ohio Nov. 3, 2011) (applying *Concepcion* and *Stolt-Nielsen* to the selfsame same arbitration clause at issue in this case and denying the plaintiff's request to arbitrate her FLSA claims collectively).

III.

For the reasons explained, Defendants' motion to compel arbitration and to dismiss (Doc. # 7) is **GRANTED**. Plaintiffs' claims shall be arbitrated individually—not collectively—and Article 14 of the OPEIU agreement, which is invalid, shall be disregarded.

**CASE DISMISSED.**

**IT IS SO ORDERED.**

                                         */s/ Dan A. Polster 5/14/13*
                                         **Dan Aaron Polster**
                                         **United States District Judge**